UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| PORSHA A. WILLIAMS, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 2:17-CV-00046 JAR |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner of Social Security's final decision denying Plaintiff Porsha Williams' application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.* and supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq.*

**I.     Background**

Plaintiff applied for disability insurance benefits and supplemental security income benefits on August 1, 2012, alleging disability as of December 25, 2011 due to mitochondrial myopathy.[1] After her application was denied at the initial administrative level, Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on February 12, 2014, and supplemental hearings on May 13, 2014 and August 19, 2014, the ALJ issued a written decision on September 9, 2014, denying Plaintiff's application. Plaintiff's request for

---

[1] Mitochondrial myopathy is a muscular disease characterized by symptoms such as muscle weakness, painful muscle cramps and fatigue. www.mda.org/disease/mitochondrial-mylpthies (last visited August 28, 2018).

review by the Appeals Council was granted and on December 9, 2015, the Appeals Council vacated the hearing decision and remanded the case for further consideration of the treating and nontreating source opinions and Plaintiff's maximum residual functional capacity ("RFC"). Following a hearing on remand on April 28, 2016, the ALJ issued a written decision on May 27, 2016, finding Plaintiff not disabled. Plaintiff's request for review by the Appeals Council was denied on May 18, 2017. Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000).

## II. Facts

The Court adopts Plaintiff's Statement of Facts (Doc. No. 20 at 2-12) to the extent they are admitted by the Commissioner (Doc. No. 25 at 3). The Court also adopts Defendant's Statement of Additional Facts (Doc. No. 25-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as necessary to address the parties' arguments.

## III. Standards

The court's role on judicial review is to determine whether the ALJ's findings are supported by substantial evidence in the record as a whole. Johnson v. Astrue, 628 F.3d 991, 992 (8th Cir. 2009). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." Id. (citations omitted). The court may not reverse merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole and to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physicians;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;
>
> (6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and
>
> (7) The testimony of consulting physicians.

Brand v. Sec'y of Dept. of Health, Educ. & Welfare, 623 F.2d 523, 527 (8th Cir. 1980).

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920(a), 404.1520(a). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005) (quoting Eichelberger v. Barnhart, 390 F.3d 584, 590-91 (8th Cir. 2004)).

First, the claimant must not be engaged in "substantial gainful activity" ("SGA"). 20 C.F.R. §§ 416.920(a), 404.1520(a). Second, the claimant must have a "severe impairment,"

defined as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work." Page v. Astrue, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting Caviness v. Massanari, 250 F.3d 603, 605 (8th Cir. 2001)).

If the claimant has a severe impairment, the ALJ must determine at step three whether any of the claimant's impairments meets or equals an impairment listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. Id.

If the claimant's impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC"). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00; 20 C.F.R. § 404.1520a(c)(3). RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in light of his impairments. SSR 96–8p. The relevant mental work activities include understanding, remembering, and carrying out instructions; responding appropriately to supervision and co-workers; and handling work pressures in a work setting. 20 C.F.R. § 404.1545(c).

At step four, the ALJ must determine whether, given his RFC, the claimant can return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); McCoy v. Astrue, 648 F.3d 605, 611 (8th Cir. 2011). If the claimant can still perform past relevant work, he will not be found to be disabled; if not, the ALJ proceeds to step five to determine whether the claimant is able to perform any other work in the national economy in

light of his age, education and work experience. 20 C.F.R. §§ 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, then he will be found to be disabled. 20 C.F.R. §§ 416.920(a)(4)(v), 404.1520(a)(4)(v).

Through step four, the burden remains with the claimant to prove he is disabled. Brantley, 2013 WL 4007441, at *3 (citation omitted). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. Id. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." Meyerpeter v. Astrue, 902 F. Supp.2d 1219, 1229 (E.D. Mo. 2012) (citations omitted).

## IV. Decision of the ALJ

The ALJ found Plaintiff had the severe impairments of fibromyalgia, migraines, and status post removal of sellar meningioma[2], but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19) After considering the entire record, the ALJ determined that Plaintiff had the RFC to perform sedentary work with additional limitations on climbing, balancing, stooping, kneeling, crouching and crawling, as well as exposure to unprotected heights, moving mechanical parts, vibration, and operating a motor vehicle. (Tr. 19-24) The ALJ found Plaintiff capable of performing her past relevant work as a supervisor, call center customer service, and financial aid coordinator, which did not require the performance of work-related activities precluded by her RFC. (Tr. 24) Thus, the ALJ found Plaintiff was not disabled as defined by the Act. (Tr. 25)

---

[2] Meningiomas are a common type of brain tumor – often benign – that develops slowly in the meninges, or the area that covers and protects the brain and spinal cord. Suprasellar meningiomas occur near the pituitary gland and optic nerves at the skull base.
www.mountsinai.org/care/neurosurgery/services/meningiomas/types (last visited 8/27/2018).

5

## V. Discussion

In her appeal of the Commissioner's decision, Plaintiff argues the ALJ failed to recognize and include mitochondrial myopathy or small fiber neuropathy as a severe impairment based on the medical evidence of record. (Doc. No. 20 at 13-15. In support of her argument, Plaintiff cites to medical reports of an "underlying muscular disorder," "non-irritable myopathic changes," "chronic myopathy," and "mitochondrial myopathy." (Tr. 484, 489, 516, 583, 681, 842-43, 884)

Plaintiff bears the burden of establishing that her impairment is severe. Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007) (citing Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir. 2000)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." Id.; 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Although severity is not an onerous requirement to meet, it is also "not a toothless standard." Id. at 708.

Here, there was no medical consensus that Plaintiff has mitochondrial myopathy. In fact, the ALJ noted in his decision that Plaintiff's initial diagnosis of mitochondrial myopathy was later determined to be a misdiagnosis and that Plaintiff actually has fibromyalgia. (Tr. 20, 485, 489, 492-94, 611, 774, 780-81, 788, 814, 841, 848, 863, 867, 869-70, 872, 875-76, 878, 880) A diagnosis of small fiber neuropathy was also unconfirmed. (Tr. 816, 842-43, 884) See Gragg v. Astrue, 615 F.3d 932 (8th Cir. 2010) (ALJ did not err in failing to consider borderline intellectual functioning as severe impairment separate and apart from a learning disorder where claimant was never actually diagnosed with borderline intellectual functioning and ALJ properly included claimant's diagnosed learning disorder in the list of his severe impairments); Nicola v.

Astrue, 480 F.3d 885 (8th Cir. 2007) (an impairment should be considered severe when that impairment is diagnosed and properly supported by sufficient medical evidence).

Moreover, even if the ALJ erred in excluding mitochondrial myopathy from the list of severe impairments, the Court finds such error was harmless because the ALJ clearly considered all of Plaintiff's limitations throughout his RFC analysis. See Hankinson v. Colvin, No. 4:11-CV-2183-SPM, 2013 WL 1294585, at *12 (E.D. Mo. Mar. 28, 2013) ("[F]ailing to find a particular impairment severe does not require reversal where the ALJ considers all of a claimant's impairments in his or her subsequent analysis."); Givans v. Astrue, No. 4:10–CV–417–CDP, 2012 WL 1060123, at * 17 (E.D. Mo. Mar. 29, 2012) (holding that even if the ALJ erred in failing to find one of the plaintiff's mental impairments to be severe, the error was harmless because the ALJ found other severe impairments and considered both those impairments and the plaintiff's non-severe impairments when determining the RFC); see also 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) ("If you have more than one impairment. We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' as explained in §§ 404.1520(c), 404.1521, and 404.1523, when we assess your residual functional capacity.").

The ALJ specifically discussed Plaintiff's reported difficulty with common functional abilities such as standing, reaching, walking, sitting, remembering, completing tasks, concentrating, and using her hands. (Tr. 20-21, 411-420) The ALJ also considered Plaintiff's subjective statements regarding stiffness, chronic fatigue and muscle pain, and conducted a proper analysis of the credibility of those statements (discussed infra). The ALJ then accommodated those limitations he found consistent with the record evidence by restricting Plaintiff to sedentary work with additional limitations. (Tr. 19)

To show an error was not harmless, Plaintiff must provide some indication that the ALJ would have decided differently if the error had not occurred. See Van Vickle v. Astrue, 539 F.3d 825, 830 (8th Cir. 2008) ("There is no indication that the ALJ would have decided differently ... and any error by the ALJ was therefore harmless."). Notably, Plaintiff does not suggest what additional imitations the ALJ should have included beyond the sedentary level RFC he determined based on the record as a whole. The Court concludes that the ALJ adequately considered all of Plaintiff's medically determinable impairments, and found she had a number of limitations related to those impairments.

The ALJ's evaluation of Plaintiff's credibility was also important to his decision. He found that although her medically determinable impairments could reasonably be expected to produce some of her alleged symptoms, her testimony as to their intensity, persistence, and limiting effects was not entirely consistent with a disabling level of impairment. (Tr. 20)

First, there was a lack of objective medical evidence to support Plaintiff's allegations. The ALJ noted that Plaintiff's examination findings and presenting behavior were not consistent with the high levels of pain she was reporting. Indeed, a review of her treatment records indicates normal strength, range of motion, gait, sensation, and reflexes. (Tr. 21, 593-94, 769, 775, 779, 784-85, 790, 794, 803, 812-13, 816, 825, 834-35, 840, 842, 863, 867) Although Plaintiff complained of continued headaches and poor balance following removal of a brain tumor in June 2015, her neurologist reported she was recovering well. (Tr. 21) Although a claimant's subjective complaints cannot be disregarded solely because they are not fully supported by objective medical evidence, they may be discounted if there are inconsistencies in the record as a whole. See Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011).

The ALJ also noted a general pattern of Plaintiff seeking medication from various providers, which resolved her pain. (Tr. 21) An impairment that can be controlled by treatment or medication, or is amenable to treatment, is not disabling. See Cypress v. Colvin, 807 F.3d 948, 951 (8th Cir. 2015); Bernard v. Colvin, 774 F.3d 482, 488 (8th Cir. 2014); Raney v. Barnhart, 396 F.3d 1007, 1010 (8th Cir. 2005).

The ALJ found Plaintiff's activities of daily living inconsistent with a disabling level of impairment. (Tr. 21) Plaintiff provides the majority of care for her autistic son, including assistance with bathing and dressing, preparing meals, and adhering to a strict schedule. (Id.) She also performs light household chores and other activities consistent with sedentary exertional work such as using a computer, writing blogs, and conducting genealogy research. (Id.) The extent of Plaintiff's activities, particularly when considered in conjunction with the medical record in this case, further supports the ALJ's decision. Chaney v. Colvin, 812 F.3d 672, 677 (8th Cir. 2016) (An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility."); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015) (collecting cases); Johnson v. Apfel, 240 F.3d 1145, 1148 (8th Cir. 2001)).

Lastly, Plaintiff acknowledged working part-time after her alleged onset date, which indicated to the ALJ that she was able to do more than she alleged. (Tr. 21) The ALJ may consider Plaintiff's part-time work in assessing her credibility. Hollis v. Colvin, No. 15-3064-CV-S-ODS, 2015 WL 7444632, at *3 (W.D. Mo. Nov. 23, 2015) (citing Tindell v. Barnhart, 444 F.3d 1002, 1006 (8th Cir. 2006)); see also Goff, 421 F.3d at 792 ("Working generally demonstrates an ability to perform a substantial gainful activity.").

In sum, the ALJ discussed many of the Polaski[3] factors in discounting Plaintiff's credibility. Because the ALJ's credibility findings are supported by good reasons and substantial evidence, the Court will defer to those findings. Nicholson v. Berryhill, 695 F. App'x 998 (8th Cir. 2017) (citing Mabry v. Colvin, 815 F.3d 386, 389 (8th Cir. 2016)).

Finally, with regard to the medical opinion evidence, the ALJ gave "considerable but not full weight" to the July 2014 opinions of Kevin Komes, M.D. Dr. Komes opined that Plaintiff had no significant abnormalities that would prevent her from performing clerical work, the same type of work she has performed in the past. (Tr. 22, 725-735) The ALJ found Dr. Komes' assessment consistent with his examination and Plaintiff's functioning in activities of daily living. The ALJ did not, however, adopt every one of Dr. Komes' specific limitations. Dr. Komes did not provide a reason for limiting Plaintiff to standing or walking for only 30 minutes at a time or up to two hours total in a workday – nor did Plaintiff indicate a need for altering her position so frequently. (Tr. 22) In addition, Dr. Komes' limitations in reaching, pushing and pulling were inconsistent with Plaintiff's full shoulder range of motion. (Tr. 22, 728) Nevertheless, the ALJ found Plaintiff's consistent reports of fatigue throughout the relevant period support a finding of sedentary exertional work rather than light. (Tr. 22)

The ALJ also gave considerable weight to the assessment of Plaintiff's treating neurologist Miguel Chuquilin, M.D. Dr. Chuquilin reported that Plaintiff's examination was "grossly unremarkable" in that she seemed very strong and showed good muscle strength and sensation. (Tr. 835) He expressed uncertainty about Plaintiff's previous diagnosis of mitochondrial myopathy, noting that her main complaint was fatigue, which could be explained by fibromyalgia or untreated sleep apnea. (Id.) Dr. Chuquilin opined that Plaintiff "seems very

---

[3] Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984).

stable and perhaps able to do [a] sedentary job." (Id.) The ALJ found Dr. Chuquilin's opinion consistent with Plaintiff's demonstrated abilities and the record as a whole. (Tr. 23)

The ALJ discounted the April 25, 2016 opinion of Plaintiff's latest primary care provider, Bridget Early, M.D., that Plaintiff "remain[s] limited in her ability to function in meaningful employment" (Tr. 884) as unsupported by her examination findings and the objective evidence of record (Tr. 23). Moreover, to the extent Dr. Early opines that Plaintiff is disabled or unable to work, her opinion cannot be given any weight because the ultimate issue of disability is reserved to the Commissioner. Brown, 611 F.3d at 952 (citing cases); 20 C.F.R. §§ 404.1527(d), 416.927(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance").

The ALJ also discounted the opinions of consultative examiner Eddie Runde, M.D., because his assessed limitations appeared to be based solely on Plaintiff's subjective reports and not upon his independent examination findings. (Tr. 22-23, 593-603) Likewise, the ALJ found no support in the treatment records for Steve Taylor, M.D.'s opinion that Plaintiff was "indefinitely disabled." (Tr. 23, 588-592, 604-623, 659-660)

When assessing a claimant's RFC, an ALJ need not credit the entirety of a medical opinion or directly correlate a medical opinion to the RFC. Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). Instead, the ALJ must determine a claimant's RFC based on his review of the record as a whole. Here, the ALJ evaluated all of the medical opinion evidence of record and adequately explained his reasons for the weight given this evidence. For the reasons set out above, substantial evidence on the record as whole supports the ALJ's evaluation of the medical opinion evidence.

## VI. Conclusion

The ALJ properly considered Plaintiff's severe impairments, evaluated the medical opinion evidence, and discounted Plaintiff's testimony in determining the RFC. The ALJ included all the limitations he found credible and supported by the record. For these reasons, the Court finds the ALJ's decision is supported by substantial evidence contained in the record as a whole, and, therefore, the Commissioner's decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 14th day of September, 2018.

*John A. Ross*
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**